1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

JULIE BREWSTER o/b/o D.B.,

Plaintiff,

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

Defendant.

)
)
)
)
)
)
)
)
)
)
)
)

NO. EDCV 10-00099 AGR

**MEMORANDUM OPINION AND ORDER**

Julie Brewster ("Brewster") filed this action on February 2, 2010 on behalf of her nephew D.B.[1]  Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the magistrate judge on March 2 and 3, 2010.  (Dkt. Nos. 10, 12.)  On March 25, 2010, the Court, upon stipulation of the parties, remanded the case pursuant to Sentence Six of 42 U.S.C. § 405(g) because the recording of the administrative hearing on May 11, 2009 could not be located.  (Dkt. Nos. 15, 16.)  On April 16, 2010, the Court, upon stipulation of the parties, ordered the case reopened.  (Dkt. No. 18.)  On August 11, 2010, the parties filed a Joint Stipulation ("JS") that addressed the disputed issues.  The Court has taken the matter under

---

[1] The court granted Brewster's application to be appointed guardian ad litem for D.B.  (Dkt. No. 4.)

1  submission without oral argument.  The decision of the Commissioner is

2  remanded for further proceedings.

3  **I.**

4  **PROCEDURAL BACKGROUND**

5  On July 14, 2005, an application for supplemental security income benefits

6  was filed on behalf of D.B.  Administrative Record ("AR") 12.  The application was

7  denied initially and upon reconsideration.  AR 36-40, 44-48.  Brewster requested

8  a hearing before an Administrative Law Judge ("ALJ").  AR 34-35. On June 6,

9  2007, the ALJ conducted a hearing at which Brewster testified.  AR 361-70.  D.B.

10  was present, but did not testify.  *Id.*  On June 22, 2007, the ALJ issued a decision

11  denying benefits.  AR 9-18.  The Appeals Council denied the request for review.

12  AR 3-5.

13  On February 7, 2008, Brewster filed Civil Action No. EDCV 08-00113 AGR

14  on behalf of D.B.  (*See* Case No. EDCV 08-00113 AGR, Dkt. No. 5.)  On August

15  20, 2008, the Court, upon stipulation of the parties, remanded the case pursuant

16  to Sentence Four of 42 U.S.C. § 405(g).  AR 397-99.  On September 26, 2008,

17  the Appeals Council issued an order vacating the ALJ's decision and remanded

18  the matter "for further proceedings consistent with the order of the court."  AR

19  393-96.  On May 11, 2009, the ALJ conducted a second hearing, at which

20  additional exhibits were admitted.  AR 436-40.  No additional testimony was

21  taken.  *Id.*  On November 4, 2009, the ALJ issued a decision denying benefits.

22  AR 371-88.  This action followed.

23  **II.**

24  **STANDARD OF REVIEW**

25  Pursuant to 42 U.S.C. § 405(g), this Court reviews the Commissioner's

26  decision to deny benefits.  The decision will be disturbed only if it is not supported

27  by substantial evidence, or if it is based upon the application of improper legal

28

1    standards.  *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995) (per curiam);

2    *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

3        "Substantial evidence" means "more than a mere scintilla but less than a

4    preponderance – it is such relevant evidence that a reasonable mind might

5    accept as adequate to support the conclusion."  *Moncada*, 60 F.3d at 523.  In

6    determining whether substantial evidence exists to support the Commissioner's

7    decision, the Court examines the administrative record as a whole, considering

8    adverse as well as supporting evidence.  *Drouin*, 966 F.2d at 1257.  When the

9    evidence is susceptible to more than one rational interpretation, the Court must

10   defer to the Commissioner's decision.  *Moncada*, 60 F.3d at 523.

**III.**

**DISCUSSION**

**A.    Child Definition of Disability**

14       "An individual under the age of 18 shall be considered disabled . . . if that

15   individual has a medically determinable physical or mental impairment, which

16   results in marked and severe functional limitations, and which can be expected to

17   result in death or which has lasted or can be expected to last for a continuous

18   period of not less than 12 months."  42 U.S.C. § 1382c(a)(3)(C)(i).[2]  An

19   impairment is "marked and severe" if it meets, medically equals, or functionally

20   equals an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix I.  20 C.F.R.

21   § 416.924(d)(1).  A claimant's condition "meets" a listed impairment if the

22   claimant's impairment matches the listed impairment.  *Id.*  A claimant's condition

23   "medically equals" the listed impairment by demonstrating medical findings that

24   are of equal medical significance to the listed impairment.  20 C.F.R. §

25   416.926(b)(1)(ii).  A claimant's condition "functionally equals" a listed impairment

26   by showing either a marked limitation in two functional domains (out of six) or an

27

28       [2]  "[N]o individual under the age of 18 who engages in substantial gainful
     activity . . . may be considered to be disabled."  42 U.S.C. § 1382c(a)(3)(C)(ii).

1  extreme limitation in one domain.  20 C.F.R. § 416.926a(a).  The six domains are

2  acquiring and using information, attending and completing tasks, interacting and

3  relating with others, moving about and manipulating objects, caring for yourself,

4  and health and physical well-being.  20 C.F.R. § 416.926a(b)(1)(i-vi).  A marked

5  limitation is more than moderate and less than extreme, and occurs when an

6  impairment(s) "interferes seriously with your ability to independently initiate,

7  sustain, or complete activities."  20 C.F.R. § 416.926a(e)(2)(i).  An extreme

8  limitation occurs when an impairment(s) "interferes very seriously with your ability

9  to independently initiate, sustain, or complete activities."  20 C.F.R. §

10  416.926a(e)(3)(i).

11  ### B.  The ALJ's Findings

12  D.B. had the severe impairments of "asthma, sleep apnea, obesity,

13  gastroesophageal reflux disease, bipolar disorder, and attention deficit

14  hyperactivity disorder."  AR 382.  With respect to the six domains of function, D.B.

15  had no limitation in acquiring and using information, no limitation in attending and

16  completing tasks, less than marked limitation in interacting and relating with

17  others, no limitation in moving about and manipulating objects, no limitation in the

18  ability to care for himself, and marked limitation in health and physical well-being.

19  AR 388.

20  ### C.  Compliance with the Court's Remand Orders

21  Brewster argues that the ALJ failed to comply with the terms of the court's

22  remand orders "to obtain plaintiff's school records, if available," "recontact treating

23  sources, and reevaluate treating source evidence, if appropriate."  JS 3.[3]

24  The ALJ must comply with a district court's remand order.  *See Sullivan v.*

25  *Hudson*, 490 U.S. 877, 886, 109 S. Ct. 2248, 104 L. Ed. 2d 941 (1989)

26  _____

27  [3] Brewster seeks an order for immediate payment of benefits.  Even assuming the ALJ failed to comply with the court's order, such failure would not entitle a claimant to payment of benefits unless the claimant shows he is

28  disabled.  *Strauss v. Comm'r of the SSA*, 635 F.3d 1135, 1138 (9th Cir. 2011).

1   ("Deviation from the [district] court's remand order in the subsequent

2   administrative proceedings is itself legal error."); *Holliday v. Astrue*, 2010 U.S.

3   Dist. LEXIS 29808, *8-*9 (C.D. Cal. 2010).  A failure to comply with the court's

4   remand order is subject to harmless error analysis.  *Blanquet v. Astrue*, 2011

5   U.S. Dist. LEXIS 6879, *12 (C.D. Cal. Jan. 24, 2011); *see also McLeod v. Astrue*,

6   640 F.3d 881, 887-88 (9th Cir. 2011) (harmless error rule).

7           On August 20, 2008, this court remanded case no. EDCV 08-00113 AGR,

8   upon stipulation of the parties, pursuant to Sentence Four of 42 U.S.C. § 405(g).

9   AR 397.  The stipulation provided, in pertinent part, that upon remand, the ALJ

10  "will be directed to obtain plaintiff's school records, if available," "recontact

11  treating sources, and reevaluate treating source evidence, if appropriate."  AR

12  398.  Thereafter, the Appeals Council remanded the case to the ALJ "for further

13  proceedings consistent with the order of the court."  AR 395.

14          Brewster's argument that the ALJ made no attempt to comply with the

15  remand order mischaracterizes the record.  The ALJ obtained a copy of D.B.'s

16  June 2006 Individualized Education Program Report (AR 417-23) and June 2006

17  Multidisciplinary Psychoeducational Report from the Val Verde Unified School

18  District (AR 424-35).  JS 6.  Since the last hearing was two years earlier (AR

19  363), the ALJ also attempted to contact Brewster to find out where D.B. was

20  currently attending school.  AR 400.  However, the phone number provided by

21  Brewster was no longer in service.  *Id.*

22          The ALJ also requested an internal medicine examination and a psychiatric

23  evaluation.  *See* AR 401-11, 412-16.

24          Brewster argues the ALJ did not recontact treating sources as directed by

25  the court.  AR 398.  The ALJ stated that, on December 22, 2008, counsel "was

26  advised to obtain all medical records since the prior decision."  AR 384.  The April

27  21, 2009 Notice of Hearing advised Brewster she had the right to submit

28  additional documentary evidence, present and question witnesses, and request

1 issuance of subpoenas.  AR 391.  At the hearing, no one advised the ALJ that
2 any treating records were missing.  AR 438-39.  The claimant bears the
3 responsibility of coming forward with, or cooperating in the procurement of, all
4 material evidence prior to or at the hearing.  *See* 20 C.F.R. §§ 416.912(a) & (c),
5 416.916, 416.1435.

6      Brewster has not shown that the steps taken by the ALJ to develop the
7 record were inadequate.  Brewster has not identified any treating source
8 evidence or school records that existed but were not made a part of the record on
9 remand.  Further, if such evidence existed, she has not explained why neither
10 she nor her attorney obtained such evidence, or asked the ALJ for help in
11 obtaining this evidence.  *See Bindner v. Astrue*, 2008 U.S. Dist. LEXIS 120424,
12 *11-*12 (C.D. Cal. 2008).  The ALJ did not fail to comply with the remand order.

13         **D.**      **Examining Psychiatrist's Opinion**

14      Brewster argues the ALJ failed to provide specific and legitimate reasons
15 for rejecting the March 2009 opinion of examining psychiatrist Dr. Gessesse, who
16 opined that D.B. suffered from a "[m]ood disorder, not otherwise specified" and
17 concluded D.B.'s psychiatric prognosis was "poor to fair."  JS 8, 10; AR 412-16.

18      An examining physician's opinion constitutes substantial evidence when it
19 is based on independent clinical findings.  *Orn v. Astrue,* 495 F.3d 625, 632 (9th
20 Cir. 2007).  An ALJ may reject an uncontradicted examining physician's medical
21 opinion based on "clear and convincing reasons."  *Carmickle v. Comm'r, Soc.*
22 *Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008).  When an examining
23 physician's opinion is contradicted, "it may be rejected for 'specific and legitimate
24 reasons that are supported by substantial evidence in the record.'"  *Id.* (citation
25 omitted).

26      The ALJ gave "little weight" to Dr. Gessesse's opinion because his
27 conclusions were not supported by his own clinical findings or the record as a

28

1    whole, and relied primarily on the subjective assertions of the claimant's

2    guardian.  AR 385.  The ALJ's analysis was extensive and exhaustive.

3         Nevertheless, the ALJ's finding that D.B. has no limitation in attending and

4    completing tasks is not supported by substantial evidence.  AR 388.  An ALJ

5    need not accept a physician's opinion if it is "'inadequately supported by clinical

6    findings.'" *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir.

7    2009) (citation omitted); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190,

8    1195 (9th Cir. 2004).  The ALJ found that Dr. Gessessee's conclusions were

9    superficial, vague and not directly related to criteria of childhood disability.  AR

10   385.  The ALJ characterized the mental status examination as essentially normal.

11   *Id.*

12        In March 2009, Dr. Gessesse opined D.B., at that time 14 years old,

13   "would have [a] difficult time maintaining attendance at school consistently due to

14   poor concentration and mood instability;" would be unable to carry out detailed

15   and complex tasks; would have a difficult time carrying out simple tasks; would

16   have the same difficulty  accepting instructions from an instructor that he had

17   during the mental status examination; would have the same difficult time

18   interacting with students that he had interacting with Dr. Gessesse; and would not

19   be able to deal with the stressors of school.  AR 415.  Dr. Gessesse noted that

20   D.B. had been hospitalized in a psych unit for suicidal ideation seven months

21   earlier in August 2008,[4] and at a very young age had attempted to jump in front of

22   a moving car.  AR 413.  Dr. Gessesse observed that D.B. had psychomotor

23   retardation, delayed speech, constricted affect, was unable to do serial 7s, and

24   could remember only one word out of a three-word recall.  AR 414.  In addition,

25   Dr. Gessesse observed that D.B. had difficulty in the interview with following

26

27        [4] Dr. Gessesse noted D.B. suffered from depression after his grandmother
     died of cancer but did not give a date of death.  AR 413.  As of January 2007, the
     Riverside Department of Mental Health reported that D.B. was living with his
28   grandmother, aunt and siblings.  AR 331.

1    instructions and interacting with the interviewer.  AR 415.  It is true, as the ALJ

2    noted, that D.B.'s thought process was concrete, linear and goal oriented.  He

3    was alert and oriented, and exhibited no evidence of hallucinations, obsessions

4    or paranoia.  He was capable of abstract thinking and had an appropriate fund of

5    knowledge, insight and judgment.  AR 414.  D.B. was "calm and well mannered."

6    AR 412.  Dr. Gessesse's conclusions in those areas are consistent, for example,

7    with the ALJ's assessment that D.B. has no limitation in acquiring and using

8    information.  However, those conclusions do not diminish D.B.'s limitation in the

9    area of attending and completing tasks.

10         The ALJ found no evidence of poor school attendance to support Dr.

11   Gessesse's opinion.  AR 385.  The ALJ's finding is not supported by substantial

12   evidence.  As the ALJ noted, D.B. was in an Individualized Education Program

13   (IEP).[5]  AR 417-23.  The IEP report dated June 2006 (at age 12) assessed D.B.

14   with an "emotional disturbance."  AR 418, 423.  He had "[p]oor task completion;

15   pays attention but does not turn in ass[]ignments; failing in all subjects."[6]  AR 418.

16         The psychoeducational report dated June 2006 concluded D.B. met the

17   eligibility criteria under emotional disturbance.  AR 434.  D.B.'s attendance is

18   "sporadic."  AR 425.  D.B. must be constantly supervised because he is

19   aggressive and frequently in fights.  AR 424.  Teacher rating indicated

20   aggression, depression "that may result in an inability to carry out everyday

21   activities or may bring on thoughts of suicide", learning problems in completing

22   schoolwork, withdrawal, and at-risk for behavioral symptoms and adaptive skills.

23   AR 430.  Two teachers stated D.B. was depressed four out of five days.  AR 431.

24

25       [5]  A claimant is not entitled to disability payments solely on the basis that
     he is a special education student.  *See Jamerson v. Chater*, 112 F.3d 1064,
26   1067-68 (9th Cir. 1997) (affirming ALJ's decision to deny supplemental security
     income payments to a claimant who attended special education classes since the
27   first grade); *see also Turcotte v. Astrue*, 2010 WL 2036141, *4 (C.D. Cal 2010).

         [6]  D.B.'s family therapist noted in May 2006 that D.B. "more often than not
28   does not complete work appropriately."  AR 325.

1    The report concluded D.B.'s depression met the three limiting conditions of

2    affecting his educational performance, existing over a long period of time and to a

3    marked degree.  AR 434.  The recommendations included strategies to help D.B.

4    complete tasks, reduce noncompliance, and attain an attendance goal.  AR 434-

5    35.[7]

6          As the ALJ noted, the reports indicated several positive areas.  In

7    psychological testing, D.B. "cooperated nicely and gave each task a good try."

8    AR 426.  D.B. was in the average range of intellectual ability, learning ability, and

9    academic functioning.  He exhibited sustained attention, good interpersonal skills,

10   and persistence on tasks.[8]  AR 427, 432-33.  He scored in the average range for

11   memory, and had no apparent deficit in adaptive functioning.  AR 428.  Similarly,

12   the Riverside Department of Mental Health's subsequent assessment in January

13   2007 diagnosed D.B. with depressive disorder NOS.[9]  AR 332.  D.B.'s

14   appearance, orientation, mood, affect, attention, concentration, psychomotor,

15   speech and thoughts were within normal limits.  AR 331.  His intelligence was

16   average, his memory was intact and his insight and judgment were fair.  *Id.*  He

17   did not exhibit hallucinations or delusions.  AR 336-37.  However, these

18   assessments do not diminish D.B.'s marked limitation in attending and completing

19   tasks.

20         The ALJ noted that Dr. Gessesse's opinion also relied on Brewster's

21   statements.  AR 385.  The fact that an opinion is based on the patient's subjective

22

23          [7] The strategies included giving D.B. two acceptable alternatives for
     responding to requests in order to give him a sense of control over the situation.
     AR 434.

24

25          [8] An examining physician noted in his February 2009 medical evaluation
     that he was able "to establish a good rapport with" D.B. and that D.B. appeared
26   appropriately oriented, his memory appeared average, and that he appeared to
     be in no acute distress.  AR 402.

27          [9] D.B.'s psychological care was apparently transferred to the Moreno
     Valley Clinic because of his history with Ms. Bell, but no records from that facility
28   are in the record.  AR 334, 336.

9

1   complaints may be properly considered.  *See Bayliss v. Barnhart*, 427 F.3d 1211,

2   1217 (9th Cir. 2005).  However, Dr. Gessesse stated that he relied upon his own

3   observations, as discussed above.  The parent rating (Brewster) in the

4   psychoeducational report was lower than either the teacher rating or D.B.'s self

5   report.  The parent rating indicated a high level of maladjustment, including

6   hyperactivity, aggression, antisocial behavior, anxiety, depression, withdrawal,

7   and attention problems.  AR 428-29.  However, even discounting the parent

8   rating and relying only on the teacher rating, the report supports a marked

9   limitation in attending and completing tasks.

10   The ALJ's reasons for discounting Dr. Gessesse's opinion in the area of

11   attending and completing tasks is not supported by substantial evidence.

12   Accordingly, this matter will be remanded to the Commissioner for further

13   proceedings based on a finding of marked limitations in the functional areas of

14   attending and completing tasks, and health and physical well being.

15   **E.      Duty to Obtain Updated Medical Opinion**

16   Brewster argues that because additional evidence was submitted after Dr.

17   Hurwitz's October 2005 medical evaluation (AR 112-20), the ALJ was required to

18   obtain an updated report from a medical expert.  JS 17-18.  Brewster cites Social

19   Security Ruling ("SSR") 96-6p for the proposition that the ALJ must obtain an

20   updated medical expert opinion before making a decision of disability.  *Id.*

21   Brewster's argument is unavailing.

22   SSR 96-6p,[10] provides that an ALJ must obtain an updated medical opinion

23   from a medical expert either (1) when no additional medical evidence is received,

24

25   [10] "The Commissioner issues Social Security Rulings [("SSRs")] to clarify
the Act's implementing regulations and the agency's policies.  SSRs are binding
26   on all components of the [Social Security Administration].  SSRs do not have the
force of law.  However, because they represent the Commissioner's interpretation
27   of the agency's regulations, we give them some deference.  We will not defer to
SSRs if they are inconsistent with the statute or regulations."  *Holohan v.*
28   *Massanari*, 246 F.3d 1195, 1202 n.1 (9th Cir. 2001) (internal citations omitted).

1   but in the opinion of the ALJ or the Appeals Council the symptoms, signs, and

2   laboratory findings reported in the case record suggest that a judgment of

3   equivalence may be reasonable; or (2) when additional medical evidence is

4   received that in the opinion of the ALJ or the Appeals Council may change the

5   state agency medical or psychological consultant's finding that the impairment is

6   not equivalent in severity to any impairment in the Listing of Impairments.

7           Brewster contends that the Appeals Council "implicitly opined that the

8   additional medical evidence may have changed the State agency consultant's

9   findings." JS 19-20 (citing AR 395). However, the Appeals Council made no

10  such finding. *See* AR 393-96. The ALJ was not required to obtain an updated

11  medical opinion from Dr. Hurwitz.

12          **F.      Lay Witness Statements**

13          Brewster further contends that the ALJ erred in failing to properly consider

14  her lay witness statements. In childhood disability cases, where the child is

15  unable to adequately describe his symptoms, the Commissioner accepts the

16  testimony of the person most familiar with the child's condition, such as a parent.

17  *Smith ex rel. Enge v. Massanari*, 139 F. Supp. 2d 1128, 1134 (C.D. Cal. 2001).

18  When an ALJ discounts such lay witness testimony, he must give reasons that

19  are "germane" to that witness. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d

20  685, 694 (9th Cir. 2009).

21          The ALJ discounted Brewster's statements to the extent they were not

22  supported by the record. AR 384. Objective medical evidence provides a valid

23  basis for discounting lay witness testimony. *Lewis v. Apfel*, 236 F.3d 503, 511

24  (9th Cir. 2001) ("One reason for which an ALJ may discount lay testimony is that

25  it conflicts with medical evidence."); *see also Bayliss v. Barnhart*, 427 F.3d 1211,

26  1218 (9th Cir. 2005) (inconsistency with medical evidence is a germane reason

27  for discrediting lay witness). As discussed above, Brewster's statements were

28

11

1    more extreme than the teacher rating and conclusions in the psychoeducational

2    report.  The ALJ's finding was supported by substantial evidence.[11]

3                                      **IV.**

4                                   **<u>ORDER</u>**

5         IT IS HEREBY ORDERED that the decision of the Commissioner is

6    remanded for further proceedings based on a finding of marked limitations in the

7    functional areas of attending and completing tasks, and health and physical well

8    being.

9         IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this

10   Order and the Judgment herein on all parties or their counsel.

11

12   DATED: August 2, 2011                    _____
                                              ALICIA G. ROSENBERG
13                                            United States Magistrate Judge

14

15

16

17

18

19

20

21

22

23

24   _____

25        [11] The ALJ also discounted Brewster's statements because of her financial
     interest in the outcome.  AR 384.  While an ALJ should avoid rejecting a family
26   member's testimony simply on the witness' interested party status because such
     a reason is not germane to the particular witness, an ALJ may consider evidence
27   that a specific witness "exaggerated a claimant's symptoms *in order* to get access
     to his disability benefits."   *Valentine*, 574 F.3d at 694; *see also Greger v.
28   Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (that girlfriend was "influenced by her
     desire to help [him]" was germane reason for doubting her credibility).